FILED

09 OCT -7 AM 10: 53

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

v.

FENG "FRANK" XIE,

          Defendant.

Civil Action No. '09 CV 2210 JM RBB

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), for its Complaint, alleges as follows:

### SUMMARY

1. Feng "Frank" Xie ("Defendant" or "Xie"), a project manager at Document Sciences Corporation ("DOCX"), engaged in insider trading in violation of the federal securities laws. Xie learned material nonpublic information regarding the contemplated acquisition of DOCX by EMC Corporation ("EMC") in advance of the December 27, 2007 public announcement that EMC would acquire DOCX. Between December 3, 2007 and December 26, 2007, while in possession of and based on material nonpublic information concerning EMC's potential acquisition of DOCX, Xie purchased a total of 10,499 shares of DOCX common stock at prices ranging from $8.10 to $8.81 per share. Xie knew, or was reckless in not knowing, that the information about the possible acquisition of DOCX was confidential, and that by trading while in possession of, and based on that information, for his own benefit, he violated his fiduciary duty or other relationship of trust and confidence that he owed to DOCX and its

shareholders. Xie made ill-gotten gains of more than $62,000 by purchasing DOCX shares in advance of the public announcement and then selling those shares after the announcement.

2. Xie violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The Commission requests that this Court permanently enjoin Xie from violating the foregoing securities laws, order him to disgorge his unlawful profits with prejudgment interest, impose civil monetary penalties and order such other and further relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to Sections 21(d) and (e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e), 78u-1, and 78aa].

4. Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts, practices, transactions, and courses of business constituting the violations occurred in the Southern District of California.

5. Xie directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

6. Unless restrained and enjoined, Xie will continue to engage in the acts, practices, transactions, and courses of business that are alleged in this Complaint and that violate the provisions of the Exchange Act at issue, or in acts, practices, transactions, and course of business of similar purpose and object. The Commission seeks a judgment permanently enjoining Xie from future violations of the provisions of the Exchange Act at issue and directing disgorgement of his ill-gotten gain, pursuant to Sections 21(d)(1) and (e) of the Exchange Act [15 U.S.C. §§

78u(d)(1) and (e)]. The Commission also brings this action for an award of civil penalties, pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-l].

## DEFENDANT

7. **Feng "Frank" Xie**, 34, resides in Carlsbad, California and is a citizen of China. Xie joined DOCX as a project manager in July 2004. He has been a project manager at EMC since EMC acquired DOCX in March 2008.

## RELEVANT ENTITIES

8. **Document Sciences Corporation** was, prior to its acquisition by EMC, a global provider of customer communications management solutions. It was incorporated in Delaware and had its principal place of business in Carlsbad, California. Before the acquisition, DOCX common stock was registered with the Commission pursuant to Exchange Act Section 12(b), and traded on the Nasdaq Global Market. In the 52 weeks prior to EMC's announcement on December 27, 2007 that it would acquire DOCX, shares of DOCX common stock traded within a range of $5.81 to $10.90 on average daily volume of approximately 6,960 shares.

9. **EMC Corporation** is a Delaware corporation headquartered in Hopkinton, Massachusetts. EMC's common stock is registered with the Commission pursuant to Exchange Act Section 12(b) and trades on the New York Stock Exchange.

## FACTUAL ALLEGATIONS

### Xie Violated His Duty to DOCX and Its Shareholders

10. Xie joined DOCX as a project manager in July 2004.

11. On July 22, 2004, Xie signed a document acknowledging he had received the company's "Insider Trading Compliance Program" and "Policy on Avoidance of Insider Trading."

3

12. DOCX's Insider Trading Compliance Program informed the company's officers, directors, employees, and other related individuals of the company's policies on insider trading. This Program explained DOCX's Policy on Avoidance of Insider Trading and included a copy of the Policy. The Program indicated that the Policy covered "officers, directors and all other employees of, and consultants to" DOCX and was "to be delivered to all new directors, employees and consultants on the commencement of their relationships with the Company, and was to be circulated to all directors and employees at least annually."

13. DOCX's Policy on Avoidance of Insider Trading prohibited insider trading. The Policy stated, in relevant part, that "[t]o avoid potential liability, under our policy all employees of the Company, including the Company's officers, must not purchase or sell securities of the Company or of any other issuer of a security at a time when the employee is aware of any material non-public information about the issuer, regardless of how that information was obtained." As one example of material information, the Policy cited "news of a pending or proposed merger or acquisition."

14. Xie signed another document on July 22, 2004, indicating that he had read, understood, and agreed to comply with DOCX's "Code of Business Conduct and Ethics."

15. Among other things, the Code of Business Conduct and Ethics noted that "all employees and directors are prohibited from (i) taking for themselves opportunities that are discovered through the use of corporate property, information or position; (ii) using corporate property, information or position for personal gain ..." In a section on "Securities Trading," the Code refers to DOCX's Insider Trading Policy and explains that trading in securities on the basis of material, nonpublic information is prohibited.

### Xie Acquired Material, Nonpublic Information
### About EMC's Interest in a Potential Acquisition of DOCX

16. In late November 2007, DOCX executives asked Xie to participate in a meeting with EMC representatives, but did not tell him that the meeting was in furtherance of EMC's due diligence of DOCX as part of a potential acquisition.

17. Instead, at least by December 3, 2007, DOCX executives told Xie a "cover story" that the meeting was part of a plan to further extend the pre-existing partnership between EMC and DOCX, through a new potential original equipment manufacturer partnership between DOCX and EMC's Documentum division. The cover story had been crafted to limit the number of people within DOCX who had access to material, nonpublic information about the acquisition discussions between EMC and DOCX. However, even though it was a cover story, Xie was warned that news of the potential new development in the partnership was not to be shared with those outside of the small group at DOCX working on the project.

18. In anticipation of the meeting with EMC, DOCX executives asked Xie to compile information about DOCX's source code and documents about certain of its products. Xie also worked with a due diligence firm hired by EMC to work on the project. Based on this work, and his position with DOCX, Xie learned that EMC was interested in acquiring DOCX.

19. On December 7, 2007, Xie flew into the Oakland, California airport to attend the meeting with EMC representatives.

20. The meeting was held at the Redwood Shores, California offices of EMC's outside counsel, which worked on the DOCX acquisition. The location of this meeting was unusual; meetings about the companies' partnership were typically held at EMC's Pleasanton, California offices. The attendees of this meeting included, among others, various employees of EMC and DOCX.

21. Xie made a presentation about DOCX technical matters at this meeting and answered related questions.

22. After the meeting concluded, Xie and his supervisor boarded the same airplane to return to San Diego, California.

23. While on the plane, Xie asked his DOCX supervisor what would happen if someone were to buy DOCX shares in a time period when they thought something was going to happen to that company.

24. Xie's supervisor told Xie that that would be a bad thing to do, that it could be traced, and that it was prohibited and illegal.

25. As late as December 19, 2007, Xie continued to prepare materials and do other work with EMC and EMC's due diligence firm.

26. In a telephonic interview with the Commission's staff on March 3, 2009, Xie claimed that he was not aware that DOCX would be acquired by EMC prior to December 27, 2007, the date of the merger announcement. Xie also told the Commission's staff that he had no role in the merger due diligence process at DOCX before it was acquired.

27. Shortly after this telephonic interview with the Commission's staff, Xie entered his supervisor's office and closed the door. Xie explained that he had received a call from the SEC, and that the SEC was asking about his trades in DOCX stock. Xie's supervisor then asked Xie if he remembered the conversation they had on the airplane in December 2007, and that Xie could not do these things. Xie responded that he did remember that conversation, but Xie said that he had already done it. Xie's supervisor recommended that Xie talk to a lawyer and their conversation ended.

### Xie Traded in DOCX Common Stock
### Ahead of the Acquisition Announcement

28. Xie began acquiring shares of DOCX common stock prior to the December 7th meeting at the offices of EMC's counsel, at the same time that he was preparing due diligence materials for EMC about DOCX. These initial purchases of 6,892 shares were made at prices ranging from $8.39 to $8.68.

29. In addition, despite the warning from his supervisor on December 7th, Xie continued to acquire DOCX common stock up to December 26, the day before the merger announcement, purchasing an additional 3,607 shares.

30. In total, between December 3, 2007 and December 26, 2007, Xie purchased 10,499 shares of DOCX common stock for prices ranging from $8.10 to $8.81.

31. At 6:00 a.m. Eastern Standard Time on December 27, 2007, EMC and DOCX issued a joint press release announcing that EMC would acquire DOCX in an all-cash transaction valued at $85 million, or $14.75 per share.

32. After this announcement, there was a significant increase in the volume and price of DOCX common stock. On December 27, 2007, DOCX common stock closed trading at $14.49, up 76% from the previous day's close of $7.91, on volume of 653,275 shares, compared with average daily volume of 12,198 over the three months preceding the acquisition announcement.

33. Based on the price of DOCX common stock at the close of trading on December 27th, Xie's ill-gotten gain from his trading in DOCX common stock totaled more than $62,000.

## **CLAIM FOR RELIEF**

34. Paragraphs 1 through 33 are realleged and incorporated herein by reference.

35. Between December 3, 2007 and December 26, 2007, in violation of a fiduciary duty or other relationship of trust and confidence owed to DOCX and its shareholders, Xie purchased 10,499 shares of DOCX common stock. Xie purchased the shares when he knew, or was reckless in not knowing, that the information he possessed concerning the proposed acquisition of DOCX was material, nonpublic information and he had a duty to safeguard the confidentiality of the information and not misuse it.

36. Xie's ill-gotten gain from his trading in DOCX common stock totaled more than $62,000.

37. By engaging in the foregoing conduct, Xie, directly or indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission requests that the Court enter judgment:

(a)     permanently enjoining Xie from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(b)     ordering Xie to disgorge all ill-gotten gains obtained through the violations alleged herein, with prejudgment interest thereon;

(c)     ordering Xie to pay a civil money penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

(d)     granting such other and further relief as may be appropriate.

Dated:     Washington, D.C.
           October 2, 2009

Respectfully submitted,

Kenneth J. Guido (#40020)
Sarah L. Levine
Attorneys for Plaintiff
Securities and Exchange Commission
Division of Enforcement
100 F Street, NE
Mail Stop 4010
Washington, DC, 20549
Telephone: (202) 551-4511 (Levine)
Facsimile: (202) 772-9245 (Levine)
levinesa@sec.gov

Of Counsel:
Antonia Chion
Daniel Chaudoin
Noel A. Gittens
Kevin Guerrero

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Securities and Exchange Commission

### DEFENDANTS
Feng "Frank" Xie

09 OCT -7 AM 10:53
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

'09 CV 2210 JM RBB

(c) Attorney's (Firm Name, Address, and Telephone Number)
Kenneth J. Guido, Sarah L. Levine, U.S. SEC, Division of Enforcement, 100 F Street, NE, Mail Stop 4010, Washington, DC

Attorneys (If Known)
Sean T. Prosser, Morrison & Foerster LLP, 12531 High Bluff Dr., Ste. 100, San Diego CA 92130

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | |
| | | **IMMIGRATION** | | |
| | | ☐ 462 Naturalization Application | | |
| | | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Section 10(b) of the Exchange Act [15 U.S.C. s. 78j(b)]

Brief description of cause:
insider trading

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE 10/2/2009
SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ____  AMOUNT ____  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____